UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

R.W. SAUDER, INC.,                               :
                Plaintiff,       :        5:14-cv-00769
                              :
         v.                                      :
                              :
B.F. AGRICULTURAL ACQUISITION, LLC,  :
T/A BORN FREE FOODS, LLC,            :
                Defendant.      :

_____

**MEMORANDUM OPINION**

**Plaintiff's Motion for Default Judgment, ECF No. 28 – Granted**

**Joseph F. Leeson, Jr.**                                    **October 26, 2015**
**United States District Judge**

**I.    Background**

      This case comes before the Court following the Court's Order, filed October 7, 2015,

directing Defendant B.F. Agricultural Acquisition, LLC, to show cause on or before October 16,

2015, why default should not be entered against it and in favor of Plaintiff in view of

Defendant's failure to obtain replacement counsel.

      Plaintiff R.W. Sauder, Inc. is a corporation with a principal place of business or office

located in Lancaster County, Pennsylvania. Compl. ¶ 1, ECF No. 1. Defendant BF Agricultural

Acquisition, LLC, is a Delaware limited liability company, which maintains or maintained its

principal place of business in Watertown, Massachusetts. Answer ¶ 2, ECF No. 3. According to

the Verified Complaint, from January 2013 to December 2013 Plaintiff provided egg processing

services, egg transportation services, and farm supplies to Defendant. Compl. ¶¶ 6-9. Plaintiff

contracted with the Defendant to provide these services and supplies, and Plaintiff provided the

1

services and supplies "at the request and upon the order of Defendant." Compl. ¶ 17. Plaintiff presented invoices to Defendant on a regular basis for the services and supplies. Compl. ¶ 18. On or about December 11, 2013, Plaintiff received an email from Defendant notifying Plaintiff that it was to cease operations for Defendant. Compl. ¶ 15. At the time that Plaintiff received this message from Defendant, Defendant owed Plaintiff $906,209.92 for products and services that Plaintiff had provided to Defendant. Compl. ¶ 19.

On January 16, 2014, Plaintiff filed a complaint in the Court of Common Pleas of Lancaster County, Pennsylvania, alleging counts of "Breach of Contract" (Count I), "Quantum Meruit" (Count II), and failure to pay an "Account Stated" (Count III), for which Plaintiff seeks damages of $906,209.92. Compl. ¶¶ 22-38. In addition, Plaintiff alleges in an untitled fourth count that Defendant owes Plaintiff $72,285.68 for the cost of unused egg cartons that Plaintiff purchased at Defendant's request and order. Compl. ¶¶ 39-49. Plaintiff alleges that it is unable to put the cartons to further use because they are uniquely labeled for Defendant and Defendant's customers. Compl. ¶ 42.

In February 2014, Defendant filed a Notice of Removal to this Court, asserting that the Court has jurisdiction on the basis of diversity. Def.'s Notice Removal, ECF No. 1. Specifically, the Notice asserts that Plaintiff is a citizen of Pennsylvania and Defendant (a limited liability company) is a citizen of Florida, the state in which its sole member, Jerry Silverman, is domiciled. Id. at ¶¶ 3-12. See Penco Prods., Inc. v. WEC Mfg., LLC, 974 F. Supp. 2d 740, 743 (E.D. Pa. 2011) ("[A] limited liability company's citizenship is determined by the citizenship of its members."). Defendant subsequently filed as an Answer that included affirmative defenses and counterclaims. ECF Nos. 1, 3. On March 5, 2014, Plaintiff filed an answer to Defendant's counterclaims, ECF No. 4; on March 26, 2014, Defendant filed an Amended Answer and

Counterclaims, ECF No. 6; and on April 16, 2014, Plaintiff filed an Amended Answer. ECF No. 6.

On August 25, 2014, Thomas A. French, Esq., filed an Uncontested Motion to Withdraw as Counsel for Defendant. ECF No. 15. Mr. French averred that beginning in early July 2014, Defendant had stopped answering or returning his phone calls and emails, and his persistent attempts to reach Defendant since that time had been unavailing. Id. By Order dated October 7, 2014, the Court granted Mr. French's Motion to Withdraw. ECF No. 19. The Court directed that Defendant had until November 14, 2014, to obtain replacement counsel and that a failure to comply with this requirement may result in the dismissal of Defendant's counterclaims for lack of prosecution. Id. Defendant failed to obtain replacement counsel, and by Order dated January 21, 2015, the Court dismissed Defendant's counterclaim for lack of prosecution. ECF No. 21.

On March 2, 2015, Defendant failed to appear at the pretrial conference that the Court had scheduled for that day. See ECF No. 24. On May 5, 2015, Plaintiff filed a Motion for Default Judgment Pursuant to Federal Rule of Civil Procedure 16(f)(1), or, in the Alternative, for Summary Judgment.[1] ECF No. 28. Out of an abundance of caution, the Court issued an Order to

---

[1]      Rule 16(f)(1) provides that "[o]n motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . fails to appear at a scheduling or other pretrial conference." Among those orders authorized by Rule 37(b)(2)(A)(ii)-(vii) is an order "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(vi). Accordingly, Plaintiff contends that in light of Defendant's failure to attend the pretrial conference held on March 2, 2015, an order granting default judgment is appropriate. See Pl.'s Br. Supp. Mot. 3, ECF No. 28-2. The Court agrees. However, out of an abundance of caution, the Court issued an Order to Show cause on October 7, 2015, permitting Defendant a final chance to obtain counsel or otherwise show cause why default judgment should not be entered against it due to Defendant's failure to obtain counsel. Defendant has failed to respond to the Court's Order. Accordingly, the Court will grant Plaintiff's Motion for Default Judgment on both bases, that is, on the basis of Defendant's failure to attend the March 2, 2015, conference and on the basis of Defendant's failure to obtain replacement counsel, both of which evidence a failure to "otherwise defend" against Plaintiff's action.

Show cause on October 7, 2015, permitting Defendant a final chance to obtain counsel or otherwise show cause why default judgment should not be entered against it due to Defendant's failure to obtain counsel. ECF No. 29. Defendant has not responded to the Court's Order.

## II.    Legal Standards

In determining whether entry of default judgment is appropriate,

> [t]he court's initial inquiry is "whether the unchallenged facts constitute a legitimate cause of action." 10A Charles Alan Wright, Arthur R. Miller, et al., Federal Practice and Procedure § 2688 (3d ed. 2013) (citing cases). As at the motion to dismiss stage, the court accepts as true the well-pleaded factual allegations in the plaintiff's complaint, except those relating to damages, as though they were admitted or established by proof, Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990), as well as all reasonable inferences that can be drawn from the complaint, e.g., Yang v. Hardin, 37 F.3d 282, 286 (7th Cir. 1994). Conclusory allegations and the parties' legal theories or "conclusions of law" are not entitled to the same presumption and are not deemed admitted. Wright & Miller, supra, § 2688.

Joe Hand Promotions, Inc. v. Yakubets, 3 F. Supp. 3d 261, 270-71 (E.D. Pa. 2014) (footnotes omitted).

"If the court determines that the plaintiff has stated a cause of action, it must then assess damages." Id. "The court must 'conduct an inquiry in order to ascertain the amount of damages with reasonable certainty.'" Spring Valley Produce, Inc. v. Stea Bros., No. CIV.A. 15-193, 2015 WL 2365573, at *3 (E.D. Pa. May 18, 2015) (quoting Star Pac. Corp. v. Star Atl. Corp., 574 F. App'x 225, 231 (3d Cir. 2014)). Rule 55(b)(2) provides that the court "may conduct hearings" when it needs to determine the amount of damages. However, "[i]f the court can determine the amount of damages to be awarded based on affidavits or other evidentiary materials, '[t]he Court is under no requirement to conduct an evidentiary hearing with testimony.'" Id. at 271 n.8 (quoting E. Elec. Corp. of N.J. v. Shoemaker Constr. Co., 657 F. Supp. 2d 545, 552 (E.D. Pa. 2009)).

4

**III.     Analysis**

A.     Default Judgment is Appropriate due to Defendant's Failure to "Otherwise Defend"
       against Plaintiff's Claim.

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." The Court of Appeals for the Third Circuit has held that the "or otherwise defend" clause in Rule 55(a) "is broader than the mere failure to plead." Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 917 (3d Cir. 1992). Accordingly, a default judgment may be imposed because a party has "faile[d] to comply with [the Court's] unambiguous orders to obtain substitute counsel, file a pretrial memorandum, and respond to the plaintiffs' discovery requests." Id. at 918. Here, the Defendant's failure to respond to the Court's orders, including its failure to attend the March 2, 2015, pretrial conference and its failure to obtain replacement counsel, constitute a failure to "otherwise defend" against Plaintiff's action, for which an entry of default judgment is appropriate. See Bibbs v. Sec. Atl. Mortgage Co., No. CIV.A. 10-0346, 2012 WL 3113975, at *3 (E.D. Pa. Aug. 1, 2012) ("Although [the defendant] answered plaintiff's complaint, its failure to participate in this action in any meaningful way since the withdrawal of [counsel] renders appropriate an entry of default as against it" under Rule 55(a)); Mendelsohn, Drucker, & Associates, P.C. v. Titan Atlas Mfg., Inc., No. CIV.A. 12-0453, 2013 WL 1842124, at *5 (E.D. Pa. May 2, 2013) ("Because a corporation cannot represent itself pro se in federal court, . . . a

corporate defendant's failure to retain counsel after being ordered to do so is a failure to

'otherwise defend' under Rule 55 that justifies a default.").[2]

In addition, an alternative basis for the Court's entry of default judgment is found in Rule

16 and Rule 37. Rule 16(f)(1) provides that "[o]n motion or on its own, the court may issue any

just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . .

fails to appear at a scheduling or other pretrial conference." Among those orders authorized by

Rule 37(b)(2)(A)(ii)-(vii) is an order "rendering a default judgment against the disobedient

party." Fed. R. Civ. P. 37(b)(2)(A)(vi).

B.      Default Judgment is Warranted under the Poulis Factors.

As the court in Mendelsohn observed, the Third Circuit requires that district courts

consider the six factors set forth in Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 868 (3d

Cir.1984),[3] before entering a default judgment as a sanction. See Mendelsohn, 2013 WL

1842124, at *5.[4] However, "[t]he Third Circuit has also indicated . . . that '[w]hen a defendant

fails to appear and perhaps under other circumstances covered by Rule 55, the district court or its

clerk is authorized to enter a default judgment based solely on the fact that the default has

occurred.'" Id. (citing Anchorage Assocs. v. V. I. Bd. of Tax Review, 922 F.2d 168, 177 n.9 (3d

Cir. 1990)). Thus, "[s]ince a corporate defendant's failure to have counsel constitutes a failure to

---

[2]      "Default judgments have been entered and affirmed against corporate defendants on this basis, whether or not the judgment was entered upon a party's motion, or sua sponte by the court." Mendelsohn, 2013 WL 1842124, at *5 (footnote omitted). See also Dougherty v. Snyder, 469 F. App'x 71, 72 (3d Cir. 2012) (observing that a corporation may appear in the federal courts only through licensed counsel and that "[t]he same applies to LLCs" because LLCs "have a legal identity separate from their members").

[3]      The six factors are: "(1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense." Poulis, 747 F.2d at 868.

[4]

defend under Rule 55(a) . . . an express analysis of the <u>Poulis</u> factors may not be required in this case." <u>Id.</u> Regardless, the default judgment entered against Defendant is fully supported by the <u>Poulis</u> factors.

The Third Circuit has held that district courts are required to make explicit factual findings concerning the <u>Poulis</u> factors, although "it is not necessary that all of the factors point toward a default" in order to support an order of default judgment. <u>See</u> <u>Hoxworth v. Blinder, Robinson & Co.</u>, 980 F.2d 912, 919 (3d Cir. 1992). At the outset, it is clear that the first three factors support the sanction of default judgment. There is no question that Defendant is responsible for its failure respond to the Court's orders and to secure counsel, that such failure has prejudiced Plaintiff, and that Defendant's failure to obtain counsel is longstanding. With respect to the fourth factor (whether Defendant's conduct was "willful and in bad faith"), the Court does not know Defendant's motive, but in view of Defendant's refusal to return the calls and emails of its former counsel and its refusal to respond to any of the Court's subsequent orders, it appears that Defendant's conduct was willful and in bad faith. With respect to the fifth factor, it is clear that any sanction short of default judgment would be insufficient in this case. Finally, with respect to the sixth factor, although Defendant answered the Complaint, its failure to participate in this action in any meaningful way since then weighs in favor of entry of default. In sum, upon weighing all of the <u>Poulis</u> factors, the Court finds that the balance of factors clearly weighs in favor of entry of default judgment.

C.   Plaintiff Has Established a Cause of Action and Damages against Defendant.

     i.   Counts I-III

As noted above, in Counts I - III, Plaintiff pleads causes of action for, alternatively, breach of contract, quantum meruit, and a failure to pay an account stated, and seeks damages of $906,209.92.

"Pennsylvania law requires that a plaintiff seeking to proceed with a breach of contract action must establish '(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages.'" Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003) (quoting CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)). Here, Plaintiff's Verified Complaint alleges that Plaintiff contracted with Defendant to provide egg processing services, egg transportation services, and farm supplies to Defendant. Further, Plaintiff alleges that Defendant breached its duty to pay for these services and supplies. Finally, Plaintiff alleges that the parties agreed that Defendant would pay a total of $906,209.92 for the services. These allegations are supported by a letter from James Maurer, Plaintiff's Vice President of Finance, to Defendant, and by a list of outstanding invoices, both of which are attached to the Complaint as Exhibit B. In the letter, dated January 14, 2014, Mr. Maurer states that he has "enclosed the most recent listing of outstanding invoices due to R.W. Sauder, Inc. for products sold to, or services rendered and costs incurred for your company totaling $906,209.92." The attached list shows the date, invoice number, and amount due for each of the outstanding invoices, and it shows the total sum due as $906,209.92. These same allegations are further supported by an affidavit signed by Plaintiff's President, Paul Sauder. See Pl.'s Mot. Ex. A, ECF No. 28-1. In sum, the factual allegations in the Complaint meet each of the three criteria required by Pennsylvania law to establish a legitimate breach of contract claim

under Pennsylvania law, and Plaintiff has established damages in the amount of $906,209.92 for this claim.[5]

  ii. <u>Count IV</u>

  Plaintiff does not expressly state which legal theory supports his claim in Count IV of the Complaint, which seeks damages for unused egg cartons that Plaintiff purchased at Defendant's request. The Court finds that the allegations state a claim for breach of contract on the basis of an implied-in-fact contract. "In Pennsylvania, a contract implied in fact may arise where the circumstances, including 'the ordinary course of dealing and the common understanding of men, show a mutual intention to contract.'" <u>Equip. Fin., LLC v. Hutchison</u>, No. 09-CV-01964, 2011 WL 4482345, at *14 (E.D. Pa. Sept. 27, 2011) (quoting <u>Liss & Marion, P.C. v. Recordex Acquisition Corp.</u>, 983 A.2d 652, 659 (Pa. 2009)). "A contract implied in fact can be found by looking to the surrounding facts of the parties' dealings." <u>Id.</u> "Contracts implied in fact have the same legal effect as any other contract." <u>Id.</u>

  Here, Plaintiff alleges that Defendant requested or ordered that Plaintiff purchase egg cartons uniquely labeled for Defendant's products in quantities "based on projected usage by Defendant." Compl. ¶¶ 40-43. The Court finds that Plaintiff's acceptance of this order constituted an implied-in-fact contract whereby Plaintiff agreed to order the cartons for the purpose of continuing the egg processing services that it was performing for Defendant, in return for Defendant's payment for those services. "On or about December 11, 2013, Plaintiff received an email from Defendant notifying Plaintiff that it was to cease operations for Defendant," breaching the implied agreement. <u>See</u> Compl. ¶ 15. Pursuant to this breach, Plaintiff seeks

---

[5] Because the Court finds that Plaintiff has established a cause of action and is entitled to damages of $906,209.92 under its breach of contract claim in Count I, the Court need not assess Plaintiff's alternative theories of liability in Counts II and III.

damages of $72,285.68, which is the "total value of the . . . egg cartons on hand at the time the agreement was terminated." Compl. ¶ 47. This amount is supported by an inventory list attached to the Complaint. See Compl. ¶ 45 & Ex. C. The Court finds that this amount represents Plaintiff's damages as measured by its reliance interest under the contract. See Restatement (Second) of Contracts § 349 (Am. Law Inst.1981) ("As an alternative to the measure of damages [based on the expectation interest], the injured party has a right to damages based on his reliance interest, including expenditures made in preparation for performance or in performance, less any loss that the party in breach can prove with reasonable certainty the injured party would have suffered had the contract been performed."); see also Phone Calls, Inc. v. Atlas Commc'ns, Ltd., No. CIV. A. 96-5734, 1997 WL 534544, at *6 (E.D. Pa. Aug. 8, 1997) ("In Pennsylvania, a plaintiff in a breach of contract case may seek damages either for lost profits or for expenditures made in reliance on the contract.") (citing id.). In sum, Plaintiff has stated a claim for breach of an implied contract, and Plaintiff has established damages in the amount of $72,285.68 for this claim.

## IV.    Conclusion

For the foregoing reasons, the Court will enter default against Defendant and will enter default judgment in the amount of $978,496.60, which is the sum of the damages sought in Counts I-III ($906,209.92) and Count IV ($72,285.68). A separate order follows.

BY THE COURT:

/s/ Joseph F. Leeson, Jr._____
JOSEPH F. LEESON, JR.
United States District Judge